UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MEGAN MANNOR, Individually
and on behalf of all other similarly
situated individuals,

    Plaintiffs,

v.

AMERILODGE GROUP, LLC.,

    Defendant.

Case Nos. 2:21-cv-11378
              2:21-cv-12626

Hon. Stephen J. Murphy, III

| Noah S. Hurwitz (P74063) | Allan S. Rubin (P44420) |
| --- | --- |
| HURWITZ LAW PLLC | Daniel C. Waslawski (P78037) |
| Attorneys for Plaintiff | Elyse K. Culberson (P82132) |
| 617 Detroit St., STE 125 | JACKSON LEWIS P.C. |
| Ann Arbor, MI 48104 | Attorneys for Defendant |
| (844) 487-9489 | 2000 Town Center, Ste. 1650 |
| noah@hurwitzlaw.com | Southfield, MI 48075 |
| | (248) 936-1900 |
| | Allan.Rubin@jacksonlewis.com |
| | Daniel.Waslawski@jacksonlewis.com |
| | Elyse.Culberson@jacksonlewis.com |

**CONSOLIDATED/AMENDED COMPLAINT AND JURY DEMAND**

Plaintiff Megan Mannor, individually and behalf of all similarly situated individuals (hereinafter "Plaintiff"), by and through her attorneys, Hurwitz Law PLLC, hereby allege as follows:

**INTRODUCTION**

1. This is a civil class action for money damages, liquidated damages, costs, attorneys' fees and other relief against Defendant Amerilodge Group, LLC.

(hereinafter "Defendant") arising out Defendant's (a) failure to accommodation Plaintiff in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*; and (b) misclassification of its Assistant General Managers (hereinafter "AGMs") as employees that are exempt from overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*.

2. Plaintiff's ADA (Case No. 21-cv-12626) and FLSA (Case No. 21-cv-11378) claims were separate cases before the Court consolidated them under Case No. 21-cv-11378 for the purpose of "this Court adjudicating the question of whether it has jurisdiction over Plaintiff's claims." *See* ECF No. 20, PageID.590 (Stipulation and Order Consolidating Cases). The parties reserved the right to later sever the cases if the Court retains jurisdiction over both matters. *Id.*

3. Plaintiff's FLSA claim is brought pursuant to the opt-in collective action provisions of the FLSA, 29 U.S.C. § 216(b) (sometimes referred to as an "opt-in" class action) and Plaintiff brings this action on her own behalf and on behalf of all other AGMs of Defendant, present and former, who were and/or are affected by the actions, pay schemes, policies, and procedures of any of Defendant's Michigan hotels. In addition, Plaintiff brings this action in her individual capacity, separate and apart from the collective action claims set forth herein.

**PARTIES AND JURISDICTION**

4. Plaintiff Megan Mannor is an individual residing in Fenton, Michigan,

2

which is located in Genesee County.

5. Defendant is a company with its registered business address in Bloomfield Hills, Michigan, which is located in Oakland County.

6. This Court has general federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs bring their claims pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq,* and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.

7. Venue is proper in this Court because Defendant's registered business address is located within the Eastern District of Michigan.

## GENERAL ALLEGATIONS

### Fair Labor Standards Act Violations

8. Defendant is a for-profit company that operates a large chain of hotels in Indiana, Ohio, and Michigan.

9. At all times relevant to this Complaint, Plaintiff and other similarly situated individuals are/were employed as AGMs at Defendant's hotels.

10. Plaintiff began working as an AGM at Defendant's hotel on or around June 21, 2019, and always performed her duties excellently

11. Defendant employs AGMs in all of its hotels.

12. The basic duties of an AGM are the same at every hotel and are primarily made up of non-managerial tasks, including performing housekeeping,

3

laundry, maintenance, reception, cleaning the indoor and outdoor premises, and attending to COVID-19 protocols.

13. AGMs are not separately trained to perform managerial duties.

14. Plaintiff does not schedule employees.

15. Plaintiff does not make final hiring decision.

16. Plaintiff does not have discretion to terminate hotel employees.

17. Plaintiff cannot set and/or adjust rates of pay and hours of work.

18. Plaintiff does not have discretion to direct the work of other employees.

19. Plaintiff does not have discretion to make status changes or recommend promotion.

20. Plaintiff cannot discipline employees.

21. Plaintiff does not have a role in planning and/or controlling the budget.

22. Defendant pays all its AGMs a salary for work performed but does not pay AGMs overtime compensation for the hours they worked in excess of forty (40) hours a week.

23. Plaintiff and other similarly situated individuals consistently and regularly work more than forty (40) hours per week but are not compensated for their overtime work by Defendant.

24. Plaintiff worked excessive hours to compensate for Defendant's refusal to hire additional personnel to perform non-managerial tasks, such as cleaning,

housekeeping, reception, and maintenance.

25. Defendant instructed Plaintiff to always be "on-call" and ready to report to the hotel in order to perform job duties of non-managerial employees.

26. Defendant classifies all AGMs as exempt from the overtime pay requirements of the FLSA and applicable state law, regardless of property location, sales volume, property size, climate, experience, number of AGMs in a location, prior experience, the number of employees in that location, the shift they worked, the category of AGM they are, or other factors

27. The primary duty of each AGM is to perform the non-managerial labor that other subordinate coworkers are tasked with performing.

28. The AGM is worked excessive hours to compensate for Defendant's refusal to hire non-exempt personnel to perform non-managerial tasks, such as cleaning, housekeeping, reception, and maintenance.

29. Defendant also requires that all AGMs report directly to a General Manager, who is the real management authority at the hotel.

30. Any management duties assigned to AGMs are routine and supervised by their superiors.

31. AGMs are not given significant discretion to manage subordinates.

32. The management work performed by AGMs does not take priority over non-managerial tasks.

33.     AGMs are told to always be "on-call" and ready to report to the hotel in order to perform the job duties of non-managerial employees.

34.     AGMs receive voice calls, text messages and Slack messages outside of scheduled work hours.

35.     Plaintiff and other similarly situated individuals do not always direct the work of at least two or more other full-time employees or their equivalent.

36.     The work performed by AGMs renders them non-exempt.

37.     Defendant applied its policy and practice of not paying overtime compensation to employees who were designated as AGMs in the same manner to all AGMs.

38.     As a result of the misclassification as exempt employees, Defendant's AGMs were and/or are being unlawfully deprived of overtime compensation for all hours worked in excess of forty (40) per week.

39.     With respect to the collective action claims under the FLSA, the collective action class is defined as (a) all current and former AGMs who worked for Defendant at any time from three (3) years preceding the filing of this lawsuit through the culmination of this litigation at any of Defendant's hotels.  Plaintiffs reserve the right to amend said class definition consistent with information obtained through discovery.

40. With respect to Plaintiffs' Michigan law claims, Plaintiffs seeks relief for themselves and on behalf of (a) all current and former AGMs who worked for Defendant at any time from three (3) years preceding the filing of this lawsuit through the culmination of this litigation at any of Defendant's hotels. Plaintiffs reserve the right to amend said class definition consistent with information obtained through discovery.

### Americans with Disabilities Act Violations

41. In early 2021, Plaintiff began suffering from a digestive disorder, which required her to be placed, at least temporarily, on a fixed schedule pursuant to the opinion of a medical professional.

42. On Saturday, February 6, 2021, Plaintiff submitted a medical note from Dr. Muhammad Al-Midani of the Digestive Disease and Nutrition Center stating that Plaintiff could return within the workweek on Thursday, February 11, 2021, provided that Plaintiff be permitted to work "a set schedule shift to avoid complications with her health."

43. Plaintiff triggered the ADA's interactive process once she provided Defendant with a doctor's note requesting a reasonable accommodation.

44. Defendant denied her request, taking the position that it cannot accommodate Plaintiff by giving her a "set schedule" because it would cause an undue hardship.

45. There is no authority to suggest that giving a hotel employee a fixed schedule as an accommodation would cause a hotel to suffer undue hardship.

46. Specifically, Defendant's purported reasoning is that Plaintiff must "ensure 24-hour coverage of the front desk, cover the employee's unscheduled absences, and respond to emergency situation."

47. Defendant *could* accommodate Plaintiff by giving her a set schedule if it simply hired more staff instead of requiring Plaintiff to work excessive hours.

48. Thereafter, Defendant removed Plaintiff from the work schedule.

49. On March 15, 2021, Defendant's Corporate Director of Human Resources, Ms. Sarah Atkins, sent Plaintiff an email saying that she was "making them feel uncomfortable."

50. In the same email, Ms. Atkins claimed that Plaintiff's disability created a "life safety issue" and that no accommodations could be made until Plaintiff's doctor issues "updated restrictions." Defendant offered Plaintiff no further explanation as to why it was effectively terminating her employment.

51. Defendant failed to engage in the interactive process.

52. Had Defendant engaged with Plaintiff in the ADA's interactive process, Plaintiff could have been reasonably accommodated and returned to work without causing Defendant to suffer any undue hardship.

53. Instead, Defendant proffered an ultimatum – take an involuntary indefinite unpaid leave of absence or be demoted.

## COUNT I
### VIOLATION OF THE FAIR LABOR STANDARDS ACT ON BEHALF OF PLAINTIFFS, INDIVIDUALLY, AND ON BEHALF OF ALL OTHER SIMILARLY SITUATED EMPLOYEES, CURRENT AND FORMER

54. Plaintiff incorporates all proceeding paragraphs above as though fully stated herein.

55. The collective action class which Plaintiffs seek to certify as a FLSA, 29 U.S.C. § 216(b) "opt-in" Class Action is defined as all current and former AGMs who worked for Defendant at any time from three (3) years preceding the filing of this lawsuit through the culmination of this litigation at any of Defendant's hotels. Plaintiffs reserve the right to amend said class definition consistent with information obtained through discovery.

56. At all times relevant to this Complaint, Plaintiffs were Defendant's employees within the meaning of the FLSA, 29 U.S.C. § 201 *et seq*.

57. At all times relevant to this Complaint, Defendant was Plaintiff's employer within the meaning of the FLSA.

58. At all times relevant to this Complaint, Defendant has been, and continues to be, an employer engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. § 203.

59. Defendant violated the FLSA when it failed to pay Plaintiffs and other similarly situated AGMs proper overtime compensation for hours worked in excess of forty (40) per week.

60. Defendant has a policy and practice of failing and refusing to pay Plaintiffs and all other similarly situated employees for all hours worked in violation of the FLSA, 29 U.S.C. §§ 201, *et seq*.

61. Defendant's conduct in this regard was a willful violation of the FLSA.

62. As a result of Defendant's unlawful acts, Plaintiffs and all other similarly situated current and former employees are being deprived of earned wages in amounts to be determined at trial. They are entitled to compensation for unpaid overtime wages, interest, liquidated damages, attorneys' fees and costs, and any other remedies available at law or in equity.

### COUNT II
### DISABILITY DISCRIMINATION
### and FAILURE TO ACCOMMODATE
### (Americans with Disabilities Act)

63. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

64. At all relevant times, Plaintiff was a "qualified individual with a disability" as defined in 42 U.S.C. § 12131(2).

65. Defendant perceived and/or regarded Plaintiff as having a physical disability. Plaintiff was therefore regarded as having a disability under 42 U.S.C. § 12102(1)(C).

66. These impairments included but were not necessarily limited to those set forth in Dr. Muhammad Al-Midani's letter provided to Defendant, which noted Plaintiff's digestive condition.

67. Plaintiff was substantially limited in major life activites of thinking, concentrating, sleeping, working, among others.

68. Despite her disability, Plaintiff was at all relevant times qualified to perform the essential functions of her job with or without reasonable accommodation.

69. Plaintiff made requests for reasonable accommodations by seeking from Defendant a more tolerable work environment and a better work schedule; such accommodations would not have been unduly burdensome to Defendant.

70. Defendant failed to accommodate Plaintiff, failed to engage in the interactive process required under the ADA, and otherwise subjected Plaintiff to adverse employment actions based on her disability as described above, including but not limited to removing her from the work schedule and offering her a demotion.

71. Defendant's actions in violation of the ADA were willful.

72. As a direct and proximate result of Defendant's violation of the ADA, Plaintiff has suffered bodily injury, feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

73. As a further direct and proximate result of Defendant's violation of the ADA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

### COUNT III
### RETALIATION
### (Americans with Disabilities Act)

74. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

75. Plaintiff engaged in protected activity when, in good faith, she requested accommodations for her disability and supplied defendant with a medical note from Dr. Muhammad Al-Midani on February 6, 2021.

76. This exercise of protected rights was known to Defendant.

77. In retaliation for complaining about disability discrimination, Plaintiff was subjected to adverse employment actions by Defendant, including but not limited to retaliatory harassment and forced leave of absence as described herein.

78. Defendants' reasons for taking these actions were retaliatory and not legally justified.

79. As a direct and proximate result of Defendant's violation of the ADA, Plaintiff has suffered bodily injury, feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

80. As a further direct and proximate result of Defendant's violation of the ADA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs claim, individually and on behalf of all other similarly situated as follows:

  a. Designation of this action as a collective action pursuant to the FLSA and prompt issuance of notice pursuant to 29 U.S.C. § 216(b);

  b. An award of unpaid overtime wages under the FLSA and Michigan state law;

  c. An award of liquidated damages under the FLSA, and Michigan state law;

  d. Attorneys' fees, costs, and interest under the FLSA and Michigan state law;

  e. Judgment against Defendant in the amount of Plaintiff's unpaid pack pay, front pay, injunctive relief, declaratory judgement, liquidated damages, punitive damages, and attorney fees under the ADA;

  f. An award of appropriate equitable relief, compensatory damages, and exemplary damages

  g. Appropriate civil penalties; and

  h. All further relief as the Court deems just and equitable.

                Respectfully Submitted,
                HURWITZ LAW PLLC
                /s/ *Noah S. Hurwitz*
                Noah S. Hurwitz (P74063)
                Attorneys for Plaintiff
                617 Detroit St., STE 125
                Ann Arbor, MI 48104
                (844) 487-9489

Dated: June 4, 2022

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MEGAN MANNOR, Individually and on behalf of all other similarly situated individuals,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>AMERILODGE GROUP, LLC.,<br><br>　　　　Defendant. | Case Nos. 2:21-cv-11378<br>　　　　　　2:21-cv-12626<br><br>Hon. Stephen J. Murphy, III |

| | |
|---|---|
| Noah S. Hurwitz (P74063)<br>HURWITZ LAW PLLC<br>Attorneys for Plaintiff<br>617 Detroit St., STE 125<br>Ann Arbor, MI 48104<br>(844) 487-9489<br>noah@hurwitzlaw.com | Allan S. Rubin (P44420)<br>Daniel C. Waslawski (P78037)<br>Elyse K. Culberson (P82132)<br>JACKSON LEWIS P.C.<br>Attorneys for Defendant<br>2000 Town Center, Ste. 1650<br>Southfield, MI 48075<br>(248) 936-1900<br>Allan.Rubin@jacksonlewis.com<br>Daniel.Waslawski@jacksonlewis.com<br>Elyse.Culberson@jacksonlewis.com |

## **DEMAND FOR TRIAL BY JURY**

　　NOW COMES Plaintiff Megan Mannor, by and through her attorneys, Hurwitz Law PLLC, hereby demands a jury trial in the above-captioned matter for all issues so triable.

                                        Respectfully Submitted,

                                        HURWITZ LAW PLLC

                                        /s/ *Noah S. Hurwitz*
                                        Noah S. Hurwitz (P74063)
                                        Attorneys for Plaintiff
                                        617 Detroit St., STE 125
                                        Ann Arbor, MI 48104
                                        (844) 487-9489

Dated: June 4, 2022

## **PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing pleading(s) were served upon the attorney(s) of record for all parties to the above cause via electronic delivery.

*/s/ Noah S. Hurwitz*
Noah Hurwitz, Attorney