UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MEGAN MANNOR,

        Plaintiff,

v.

AMERILODGE GROUP, LLC,

        Defendant.

_____/

Case No. 2:21-cv-11378

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER
DENYING MOTION TO STRIKE [13] AND
GRANTING MOTION TO COMPEL ARBITRATION [14]**

Plaintiff Megan Mannor sued Defendant Amerilodge Group under the Americans with Disabilities Act ("ADA") and the Fair Labor Standards Act ("FLSA"). ECF 22, PgID 595. After Defendant amended its answer to Plaintiff's FLSA claim, ECF 10, Plaintiff moved to strike affirmative defenses two and thirteen under Federal Rule of Civil Procedure 12(f), ECF 13. Defendant then moved to compel arbitration under the Federal Arbitration Act ("FAA"). ECF 14. Both motions were opposed by the non-moving parties. ECF 15 (Defendant's response); ECF 16 (Plaintiff's response). When the Court consolidated Plaintiff's cases, the parties stipulated that Plaintiff's complaints involved common questions of law and fact, and that the Court's resolution of the motion to compel arbitration would apply to both

1

complaints. ECF 20.[1] For the following reasons, the Court will deny Plaintiff's motion to strike and grant Defendant's motion to compel arbitration.[2]

## BACKGROUND

Defendant owns, manages, and operates hotels across Michigan, Indiana, and Ohio. ECF 22, PgID 596. On June 22, 2019, Plaintiff accepted Defendant's job offer as an Assistant General Manager ("AGM") at a Michigan Holiday Inn Express & Suites. ECF 14-1, PgID 230.

During Plaintiff's onboarding process, Defendant provided her with employment and human resource documents. *See generally* ECF 14-1. The three relevant documents included the Amerilodge Group Employee Handbook, *id.* at 235–59, the Terms of Use and Consent to Electronic Signature, *id.* at 232–33, and the Contract Between Employee and Amerilodge Group, LLC and Acknowledgment and Acceptance of Employee Handbook, *id.* at 261–63. Defendant issued the documents through its Paymaster iSolved system where the documents were always available and accessible to Plaintiff. *Id.* at 228.

The Handbook outlines Defendant's employment practices and its current policies and rules. *Id.* at 236. The Handbook makes two things clear: (1) only Defendant may "modify or terminate any of its policies or rules at any time with or

---

[1] The stipulation also permitted Plaintiff to consolidate the complaints into one amended complaint. *Id.* at 592. Plaintiff later filed the amended complaint. ECF 22.
[2] Based on the parties' briefing, the Court will resolve the motions on the briefs without a hearing. See Fed R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2).

2

without notice," and (2) "[n]othing in [the] [H]andbook constitutes a contract or an offer to enter into a contract." *Id.*

By signing the Consent, Plaintiff agreed to receive all employment documents electronically. *Id.* at 232. Plaintiff also agreed that her electronic signature was the legal equivalent of her written signature on "any associated [employment] documents." *Id.* Plaintiff executed the Consent on July 1 and never withdrew it. *Id.* at 225, 233.

The Acknowledgment is a two-part document. *Id.* at 261–63. Part one, titled "Contract Between Employee and Amerilodge Group, LLC and Acknowledgement and Acceptance of Employee Handbook," contains an arbitration agreement, a severability clause, and a class-action waiver. *Id.* at 261–62. Part one provides:

> I, the undersigned employee, in consideration of my employment or continued employment, hereby acknowledge and agree to the following:
> . . . .
> I agree that if a dispute arises concerning my employment with and/or termination by the Company the exclusive method for resolving the dispute arising out of employment or in any way related to any alleged wrongful act on the part of the Company . . . including but not limited to any claim for wages . . . and/or any statutory claim including . . . [ADA] . . . [and] [FLSA] . . . shall be through the procedures and policies of the American Arbitration Association utilizing a single arbitrator. I hereby waive my right to adjudicate any claim against the agency. I hereby also expressly waive my right to bring any action or claim under this Agreement as a member of any purported class or representative proceeding. This Contract applies to all claims whether brought during my employment with Company or at any time after termination of employment with Company . . . . Notwithstanding anything to the contrary in the employment-related rules of the American Arbitration Association, the cost for arbitration shall initially be split equally between me and the Company, provided however that the prevailing party in any dispute between the parties will be entitled to its costs and expenses including attorney fees, court or arbitration costs and all other costs associated with such action . . . .

> . . . Any claim by me, including but not limited to any breach of this Agreement, amounts due me, or for any other cause shall be brought in my individual capacity as specified herein, and not as a plaintiff or class member in any purported class or representative proceeding.
> . . . .
> If any provision of this Contract is held to be invalid, unenforceable or contrary to law, such provision shall be deemed to be deleted and the validity and enforceability of the remaining provisions of this Contract shall in no way be affected thereby.

*Id.* Part one also includes signature lines for the employee, witnesses, and Defendant to physically sign. *Id.* at 262. Relevant here, a copy of the agreement is attached to the Handbook's final two pages. *Id.* at 258–59.

Part two of the Acknowledgment, titled "Acknowledgment and Receipt," states: "[Employee] [has] read and understood the content and any requirements or expectation of the attached document: Handbook Acknowledgement . . . . [Employee] [has] access to an electronic copy of the document and agree[s] to abide by the document guidelines as a condition of [] employment . . . ." *Id.* at 263. Accordingly, the "Handbook Acknowledgement" refers to part one of the Acknowledgment as previously described. *Id.* Like part one, part two includes signature lines for the employee to place their electronic signature. *Id.*

On July 1, and again on October 24, Plaintiff executed the Acknowledgment. *Id.* at 261–63, 265–67, 269–71. By placing her electronic signature on the "Acknowledgment and Receipt" (part two), Plaintiff confirmed that she had read and understood the "Handbook Acknowledgment" (part one) and agreed "to abide by the document." *Id.* But neither Plaintiff nor Defendant physically signed part one of the Acknowledgment. *Id.* at 262, 266, 270.

4

After completing her training and onboarding procedures, *id.* at 228, 273–75, Plaintiff worked as an AGM and "performed her duties excellently." ECF 22, PgID 596. While employed, Plaintiff's duties included "housekeeping, laundry, maintenance, reception, cleaning the indoor and outdoor premises, and attending to COVID-19 protocols." *Id.* at 596–97. Plaintiff also trained employees on employment policies and procedures. ECF 14-1, PgID 228.

In early 2021, a medical professional diagnosed Plaintiff with a digestive disorder. ECF 22, PgID 600. The disorder required Plaintiff to work "a set schedule [] to avoid complications with her health." *Id.* (quotation marks omitted). Defendant allegedly denied Plaintiff's request for a "set schedule" and instead "proffered an ultimatum—take an involuntary indefinite unpaid leave of absence or be demoted." *Id.* at 600, 602.

Plaintiff later filed the present lawsuit. ECF 22. Plaintiff alleged that Defendant violated the FLSA by misclassifying AGMs as exempt from overtime compensation. ECF 22, PgID 595. Plaintiff contended that her primary "non-managerial labor" duties entitled her, and other AGMs, to overtime pay. ECF 22, PgID 598, 603. Plaintiff therefore brought her FLSA claim in her individual capacity and "on behalf of all other AGMs" under the FLSA's opt-in collective action provision. *Id.* at 595. Plaintiff further claimed that her digestive disorder qualifies as a disability and that Defendant's "adverse employment actions" were discriminatory, a failure to accommodate, and retaliatory under the ADA. *Id.* at 603–06.

5

**LEGAL STANDARD**

I. <u>Motion to Strike</u>

On a party's motion or sua sponte, "the [C]ourt may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The motion's purpose is to "avoid . . . litigating spurious issues" and to promote efficient use of time and judicial resources. *Kennedy v. City of Cleveland*, 797 F.2d 297, 305 (6th Cir. 1986) (quotation omitted).

Courts rarely grant a motion to strike and generally regard those motions with disfavor. *Operating Eng'rs Loc. 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (citation omitted); *Hemlock Semiconductor Corp. v. Deutsche Solar GmbH*, 116 F. Supp. 3d 818, 823 (E.D. Mich. 2015) (noting that a motion to strike "is a drastic remedy to be resorted to only when required for the purposes of justice") (quoting *Brown & Williamson Tobacco Corp. v. U.S.*, 201 F.2d 819, 822 (6th Cir. 1953)). Still, the Court will strike an affirmative defense "if it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense and are inferable from the pleadings." *Operating Eng'rs Loc. 324 Health Care Plan*, 783 F.3d at 1050 (quotation and quotation marks omitted).

II. <u>Motion to Compel Arbitration</u>

Under the FAA, the Court must enforce valid arbitration agreements. *See* 9 U.S.C. § 2. "By its terms, the [FAA] leaves no place for the exercise of discretion . . . but instead mandates that [the Court] *shall* direct the parties to

6

proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original) (citing 9 U.S.C. §§ 3–4). A defendant may invoke arbitration by (1) requesting a stay of the proceedings under § 3 while "any issue referable to arbitration under [the] agreement" is arbitrated, or (2) moving under § 4 for an "order directing that such arbitration proceed in the manner provided for in [the arbitration] agreement." *Boykin v. Fam. Dollar Stores of Mich., LLC*, 3 F.4th 832, 836–37 (6th Cir. 2021).

The Court reviews an arbitration agreement's validity under the applicable State law of contract formation. *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 416 (6th Cir. 2011). To determine whether the agreement is "in issue," the Court considers evidence outside the pleadings as it would when adjudicating a summary judgment motion under Civil Rule 56. *Boykin*, 3 F.4th at 838. But, in accordance with strong federal policy, the Court must resolve "any ambiguities in the contract or doubts to the parties' intentions" in favor of arbitration. *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (citation omitted). Thus, unless the party opposing arbitration establishes a genuine dispute of material fact as to the agreement's validity, the Court will order arbitration. *See Boykin*, 3 F.4th at 839.

## DISCUSSION

The Court will first deny Plaintiff's motion to strike, ECF 13. After, the Court will grant Defendant's motion to compel arbitration, ECF 14.

I.  Motion to Strike

Plaintiff requested that the Court strike affirmative defenses two and thirteen in Defendant's amended answer. ECF 13, PgID 74.³ Both requests lack merit.

A.  *Defense Two*

Defense two provides: "Plaintiff's claims, and some or all the claims of the putative collective class, are barred by the existence of an arbitration agreement containing class and collective action waivers such that this case must be litigated individually and in arbitration." ECF 10, PgID 48. Plaintiff argued that the arbitration agreement is unenforceable because neither the Handbook nor the Acknowledgment created a valid arbitration contract. ECF 13, PgID 83–87.

But Plaintiff's arguments are misplaced. Civil Rule 8(c)(1) required Defendant "to state any avoidance or affirmative defense, including[] arbitration." Defendant need not provide factual specificity but merely "state in short and plain terms its defenses." Fed. R. Civ. P. 8(b)(1)(A). Plaintiff suggested that Defendant's arbitration defense "cannot succeed despite any state of the facts which could be proved." ECF 13, PgID 74. But an affirmative defense that is "inadequate to withstand scrutiny on a dispositive motion, will only be stricken . . . when the [defense] . . . has no possible relation to the controversy." *Hemlock Semiconductor Corp.*, 116 F. Supp. 3d at 834–35 (quotation omitted). As it stands, Defendant's arbitration defense bears directly on Plaintiff's claims and Defendant followed the relevant Civil Rule requirements.

---

³ Plaintiff also moved to strike Defendant's affirmative defense ten, ECF 13, PgID 73, but has since withdrawn the request, ECF 17, PgID 528 n.1.

ECF 10, PgID 48; *Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997) ("The purpose of Rule 8(c) . . . is to give the opposing party notice of the affirmative defense and a chance to respond."). Put simply, it would be premature for the Court to determine the arbitration agreement's validity in a motion to strike. Thus, the Court will deny Plaintiff's motion to strike affirmative defense two.

  B.  *Defense Thirteen*

Defense thirteen provides: "[t]o the extent overtime is owed, it is owed on a half-time basis as Plaintiff and the putative class were paid on a salary basis that was intended to compensate them for all hours worked." ECF 10, PgID 50.

Defense thirteen invokes the fluctuating workweek ("FWW") methodology first outlined in *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 580 (1942). The Labor Department later issued an interpretive rule that allows an employer to use the FWW method to compute an employee's overtime compensation in some cases. 29 C.F.R. § 778.114. Under the FWW method, an employee who agrees to receive a fixed salary but whose hours fluctuate weekly, has a right to overtime compensation for hours worked in excess of forty at one-half their regular rate of pay. *See id.*; *Missel*, 316 U.S. at 580.

Plaintiff argued that defense thirteen contravenes Sixth Circuit authority that rejects the "retroactive application of the half-time FWW method in FLSA misclassification cases." ECF 13, PgID 92. But Plaintiff neither cited a case nor has the Court found any such controlling Sixth Circuit precedent. *See id.* at 92–93; *Arrington v. Mich. Bell Tel. Co.*, No. 10-10975, 2012 WL 4868225, at *2 (E.D. Mich.

9

Oct. 15, 2012) ("There is no Sixth Circuit precedent controlling the calculation of damages in FLSA misclassification cases."). And other Circuits have applied the FWW method when calculating a misclassified employee's retroactive overtime wages.[4]

Given the current proceeding's early stage, the Court is not positioned to find whether the FWW method is the appropriate mechanism for calculating Plaintiff's potential damages. Even if the FWW method does not apply, the insufficiency of defense thirteen is not clearly apparent and the Court will therefore deny the motion to strike.

## II.   Motion to Compel Arbitration

To resolve a motion to compel arbitration, the Court must determine: (1) whether the parties agreed to arbitrate; (2) the agreement's scope; (3) whether Congress intended any federal statutory claims asserted to be non-arbitrable; and (4) whether to stay the proceedings if some claims are not arbitrable. *Glazer v. Lehman Bros.*, 394 F.3d 444, 451 (6th Cir. 2005) (citation omitted). Plaintiff disputed only the first factor. *See generally* ECF 16.[5]

Under Rule 56, Defendant met its initial burden of proof by showing that Plaintiff agreed to arbitrate. *See* ECF 14; *Boykin*, 3 F.4th at 839. Defendant

---

[4] *See, e.g., Black v. SettlePou, P.C.*, 732 F.3d 492, 496–98 (5th Cir. 2013) (applying *Missel*); *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1310–11 (11th Cir. 2013) (same); *Urnikis-Negro v. Am. Fam. Prop. Servs.*, 616 F.3d 665, 676–84 (7th Cir. 2010) (same); *Clements v. Serco, Inc.*, 530 F.3d 1224, 1230–31 (10th Cir. 2008) (applying § 778.114); *Valerio v. Putnam Assocs. Inc.*, 173 F.3d 35, 39–40 (1st Cir. 1999) (affirming a district court that retroactively applied § 778.114).
[5] Because only the first factor is disputed, the Court will not address the other factors.

10

introduced a declaration from the Corporate Director of Human Resources that clarified Defendant had provided Plaintiff with onboarding documents and Plaintiff had consented to her electronic signature and signed the Acknowledgment twice. ECF 14-1, PgID 223–28. In turn, Plaintiff needed to establish a genuine dispute of material fact as to the arbitration agreement's validity by presenting "specific facts, as opposed to general allegations, that would allow a rational trier of fact to find that [she] did not acknowledge the agreement." *Boykin*, 3 F.4th at 839 (internal quotation marks and quotation omitted).

Rather than presenting specific facts, Plaintiff contended that the arbitration agreement is unenforceable because (1) there was no agreement, (2) there was no mutuality of obligation, and (3) because of the mandatory cost-splitting requirement. *See* ECF 16.

The Court will address each argument in turn. After, the Court will dismiss Plaintiff's remaining claims.

*A.     Agreement*

To start, Plaintiff pointed out that she did not sign "a document that would compel her to arbitrate any claims arising from her employment." *Id.* at 519. Indeed, Plaintiff did not physically sign part two of the Acknowledgment which contains the arbitration provision. ECF 14-1, PgID 258–59. At first glance, the purported agreement seems to violate an elementary principle of contract law: acceptance. But,

under Michigan law,[6] an acceptance "sufficient to create a contract arises where the individual to whom an offer is extended manifests an intent to be bound by the offer, and all legal consequences flowing from the offer, through voluntarily undertaking some unequivocal act sufficient for that purpose." *Hergenreder*, 656 F.3d at 417 (quoting *Kloian v. Domino's Pizza L.L.C.*, 273 Mich. App. 449, 453–54 (2006)). For two reasons, Plaintiff manifested an intent to be bound by the arbitration agreement.

First, Plaintiff "agreed to abide" by the arbitration provision when she electronically signed part two of the Acknowledgment. ECF 14-1, PgID 263 ("[Plaintiff] [has] read and understood the content and any requirements or expectations of the attached document: Handbook Acknowledgment."). And Plaintiff agreed that placing her electronic signature established her acceptance of any employment document "as if actually signed by [her] in writing." *Id.* at 232. Because the arbitration agreement was attached to the signed Acknowledgment—a fact Plaintiff did not dispute—Plaintiff agreed to arbitrate any FLSA or ADA claims arising out of or relating to her employment with Defendant. *See Hall v. Pac. Sunwear Stores Corp.*, No. 15-CV-14220, 2016 WL 1366413, at *6 (E.D. Mich. Apr. 6, 2016) (finding that an electronic acknowledgment of an arbitration agreement constitutes acceptance under Michigan law).

Second, the circumstances of Plaintiff's electronic acknowledgment suggest that she assented to the arbitration agreement. Under Michigan law, after receiving

---

[6] Despite lacking a choice-of-law provision, no party disputed that Michigan law applies to the arbitration agreement's formation. *See generally* ECF 14; ECF 16.

adequate notice, an employee's continued employment suggests assent to an arbitration agreement. *Dawson v. Rent-A-Ctr. Inc.*, 490 F. App'x 727, 730 (6th Cir. 2012) ("Michigan law permits parties to accept offers through conduct.") (citation omitted). Adequate notice may include electronically posting the agreement or meetings in which the employer notifies and discusses the arbitration agreement with the employee. *Tillman v. Macy's, Inc.*, 735 F.3d 453, 459 (6th Cir. 2013) (citing *Hergenreder*, 656 F.3d at 418–19).

Plaintiff first signed the Acknowledgment on July 1. ECF 14-1, PgID 227, 263. More than a month later, Plaintiff received training on Defendant's hiring processes, employment policies, and the Handbook's terms. *Id.* at 228, 274. In October, Defendant once again provided Plaintiff with copies of the Handbook and Acknowledgment, and Plaintiff once again certified that she read and understood the documents' contents and requirements. *Id.* at 227–28, 271. Throughout her employment, the Handbook, Acknowledgment, and Consent were available and accessible to Plaintiff through Defendant's online Paymaster iSolved system. *Id.* at 228. In addition, as an AGM, Plaintiff trained other employees on Defendant's policies and procedures. *Id.* Thus, Plaintiff cannot, and does not, claim that she was unaware of the arbitration agreement. *See generally* ECF 16. Even without any physical signature, Plaintiff's continued employment is enough to show she accepted the arbitration agreement. *See Hall*, 2016 WL 1366413, at *5 ("The absence of a signature is not fatal to the formation of a contract because an offeree can assent through

conduct, such as continued employment after the effective date of the policy.") (citation omitted).

### B. Mutuality of Obligation

Plaintiff next argued that the arbitration agreement is unenforceable because a copy of the arbitration provision is contained within the Handbook. ECF 16, PgID 521. As mentioned, the Handbook's second page contains a disclaimer that states Defendant may "modify or terminate any of its policies or rules at any time." ECF 14-1, PgID 236.

An illusory contract is "[a]n agreement in which one party gives as consideration a promise that is so insubstantial as to impose no obligation." *Emps. Mut. Cas. Co. v. Helicon Assocs., Inc.*, No. 322215, 2017 WL 3925509, at *5 (Mich. Ct. App. Sept. 7, 2017) (per curiam) (alteration in original) (quotation omitted). In support, Plaintiff relied on *Heurtebise v. Reliable Business Computers*, 452 Mich. 405 (1996). Yet *Heurtebise* differs from the facts here.

In *Heurtebise*, an employee's signed acknowledgment agreeing to a handbook's arbitration provision did not create a valid arbitration agreement because the handbook contained illusory language and a contractual disclaimer. *Id.* at 413. There, the signed acknowledgment *solely* referred to the handbook and no other document. *Id.* at 409 n.1, 413–14. Here, however, the Acknowledgment states, "[Plaintiff] [has] read and understood the content and any requirements or expectations of the attached document to: Handbook Acknowledgement." ECF 14-1, PgID 271. Although the Handbook contains a *copy* of the arbitration agreement, the Acknowledgment is

14

a distinct document from the Handbook. *Compare id.* at 258–59 (Handbook copy), *with id.* at 261–263 (Acknowledgment). What is more, Defendant is seeking to enforce the arbitration agreement through the twice-signed Acknowledgment rather than the copy in the Handbook. ECF 18, PgID 544. And unlike the Handbook, the Acknowledgment contains no contractual disclaimer or illusory language. ECF 14-1, PgID 269–71.

    C.    *Cost-Splitting Provision*

Last, Plaintiff argued that the arbitration agreement is unenforceable given the cost-splitting provision.[7] But the argument fails.

"A cost-splitting provision should be held unenforceable whenever it would have the 'chilling effect' of deterring a substantial number of potential litigants from seeking to vindicate their statutory rights." *Morrison v. Cir. City Stores, Inc.*, 317 F.3d 646, 661 (6th Cir. 2003). Under *Morrison*, the Court must "define the class of . . . similarly situated potential litigants by job description and socioeconomic background," and "look to average or typical arbitration costs" compared against "the potential costs of litigation." *Id.* at 663–64.

But the party seeking to invalidate a cost-splitting provision bears the burden to show that arbitration would be prohibitively expensive. *See Mazera v. Varsity Ford*

---

[7] Even if Plaintiff is requesting that the Court sever the cost-splitting provision, Civil Rule 7(b)(1) requires that any "request for a court order must be made by motion." The motion must be in writing, state the relief requested, and "state with particularity the grounds for seeking the order." *Id.* Plaintiff's request was stated in her response to Defendant's motion. ECF 16, PgID 523–25. Under Rule 7(b)(1)'s plain terms, Plaintiff's response is not a motion.

15

*Mgmt. Servs., LLC*, 565 F.3d 997, 1004 (6th Cir. 2009) (citation omitted); *Morrison*, 317 F.3d at 659–60 ("[T]he burden of demonstrating that incurring such costs is likely . . . rests, at least initially, with the party opposing arbitration."). And Plaintiff neither offered evidence nor engaged in *Morrison*'s analysis. *See* ECF 16, PgID 523–25. Given Plaintiff's lack of evidence, the Court simply cannot determine whether the cost-splitting provision would deter Plaintiff or other similarly situated individuals from vindicating their FLSA or ADA rights.

    D.    *Dismissal of Remaining Class Claims*

Finally, the Court must enforce an arbitration agreement according to its terms, "including terms providing for individualized proceedings." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018). By electronically signing the Acknowledgment, Plaintiff agreed to arbitrate her FLSA and ADA claims. ECF 14-1, PgID 261–63. And Plaintiff waived her right to bring any class or representative action. *Id.* "[E]mployees who do not sign individual arbitration agreements are free to sue collectively, and those who do sign individual arbitration agreements are not." *Gaffers v. Kelly Servs., Inc.*, 900 F.3d 293, 296 (6th Cir. 2018) (citation omitted). Because all claims under the agreement are referred to arbitration, and neither party requested only a stay,

the Court will dismiss the complaint and order Plaintiff to arbitrate the claims on an individual basis.[8]

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the motion to strike [13] is **DENIED**.

**IT IS FURTHER ORDERED** that the motion to compel arbitration [14] is **GRANTED** and the case is **DISMISSED**.

This is a final order that closes the case.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: July 20, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 20, 2022, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager

---

[8] Defendant requested that the Court compel arbitration and dismiss the complaint. ECF 14, PgID 220. Plaintiff has not explained whether the Court should dismiss or stay the complaint. *See generally* ECF 16. The Court may dismiss the complaint after compelling arbitration when "neither party asks for a stay." *Arabian Motors Grp. W.L.L. v. Ford Motor Co.*, 19 F.4th 938, 942 (6th Cir. 2021); *see also Ross v. Subcontracting Concepts, LLC*, No. 20-12994, 2021 WL 6072593, at *8–9 (E.D. Mich. Dec. 23, 2021) (dismissing FLSA collective-action complaint and compelling individualized arbitration).